# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY PACK, et al., ) | 1:08cv0177 DLB |
| ) | |
| Plaintiffs, ) | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION |
| v. ) | |
| ) | (Document 38) |
| FORT WASHINGTON II, et. al., ) | |
| ) | |
| Defendants. ) | |

    Plaintiffs Tiffany Pack ("Mrs. Pack-Lo") and Chengkou Lo, and their minor children, Charlie Pack-Lo and Cameron Pack-Lo, filed the instant motion for summary judgment, or summary adjudication in the alternative, on October 9, 2009.  The matter was heard on December 19, 2009, before the Honorable Dennis L. Beck, United States Magistrate Judge.  Stuart Fagan appeared on behalf of Plaintiffs.  Joseph Cooper appeared on behalf of Defendants Fort Washington II, dba Fort Washington II Apartments, and David S. Siegel & Co., Inc.

## **BACKGROUND**

    Plaintiffs filed the instant action under the Fair Housing Act ("FHA") on February 1, 2008. Plaintiffs filed a First Amended Complaint ("FAC") on May 14, 2008, naming Fort Washington II, dba Fort Washington II Apartments, and David S. Siegel & Co., Inc., as Defendants.  The FAC arises from allegations of discriminatory treatment towards families with children during their tenancy at Fort Washington II Apartments.  Plaintiffs allege causes of action for (1) violation of

1

the FHA; (2) violation of the California Fair Employment and Housing Act; (3) violation of the California Unruh Civil Rights Act; (4) unfair business practices under California Business and Professions Code section 17200; (5) negligence and (6) retaliatory eviction.  Plaintiffs request monetary damages as well as declaratory and injunctive relief.

Plaintiffs filed the instant motion for summary judgment on October 9, 2009.  Defendants filed their opposition on November 11, 2009.  On December 10, 2009, Plaintiffs filed their reply.

**UNDISPUTED MATERIAL FACTS**

On or about September 16, 2004, Plaintiffs entered into a lease and moved into the Fort Washington II Apartments.  Undisputed Material Fact ("UMF") 1.  Fort Washington II, General Partnership, is the owner of the Fort Washington II Apartments.  UMF 2.  During the time of Plaintiffs' tenancy, Defendant Seigel & Co., Inc., managed the Fort Washington II Apartments.  UMF 3.

Plaintiffs were given a copy of the Lease Rules and Regulations at the inception of their tenancy.  UMF 4.  The Lease Rules and Regulations contained the following rules:
(1) "Supervision problems will be grounds for eviction.  All children 10 and under must be supervised by an Adult while outside."  UMF 5; and (2) "Persons under the age of 18 must abide by the set curfew of 10:00 P.M."  UMF 6.  These two rules were part of the following section regarding noise and conduct:

> "Tenants are responsible for the supervision of other occupants and their guests at all times.  Supervision problems will be grounds for eviction. All children 10 and under must be supervised by an Adult while outside.  Any damage to an apartment, the building, the common grounds, or upon the entire property of the apartment community, by a resident, residents' family, invitees, or guests shall be charged to the Tenant.  Persons will not be allowed to loiter in or on stairways, elevator, laundry rooms, driveways, or other landscaping.  Persons under the age of 18 must abide by the set curfew of 10:00 p.m."

UMF 47.  The Lease Rules and Regulations also stated that, "It is understood and agreed to by the parties that the Landlord prohibits bicycle riding, skateboarding, rollerblading, and skating along the common area sidewalks, walkways and parking areas."  UMF 7.

Plaintiffs were given a copy of the Pool/Spa Rules at the inception of their tenancy.  UMF 8.  The Pool/Spa Rules contained the following rule: "Children under the age of 14 years old must be accompanied by their parent or legal guardian at all times."  UMF 9.

Plaintiffs were given a copy of the Clubhouse Rules and Regulations at the inception of their tenancy.  UMF 10.  The Clubhouse Rules and Regulations contained the following rules: (1) "No persons under the age of 18 will be allowed to use the facility under any circumstances without ADULT, RESIDENT supervision."  UMF 11; (2) "No one under the age of 12 is allowed to use the Pool Table under any circumstances at any time."  UMF 12.

On May 9, 2005, Anny Dodd became onsite manager at Fort Washington II.  UMF 14.  Ms. Dodd was hired by David S. Siegel & Co., Inc., to work at Fort Washington II, which was responsible, at all relevant times, for the hiring and supervision of all employees who worked at the Fort Washington II Apartments.  UMF 15, 16.  Ms. Dodd was specifically hired to manage the Fort Washington Apartments.  UMF 17.

On or around August 30, 2005, Plaintiffs received a notice from Ms. Dodd demanding that they clean up the sidewalk chalk that was in front of their dwelling.  UMF 21.  On or about September 2, 2005, Plaintiffs received a second notice from Ms. Dodd, dated August 30, 2005, and stating, among other things, "Do not allow children to draw on the walkways. You need to comply with this immediately."  UMF 23.

In or around August 2005, Plaintiffs discovered mold in the closet of one of the bedrooms of their unit and complained to Defendants.  UMF 24.

Plaintiffs received a second notice of non-compliance on November 2, 2005.  The notice declared: "Breach of other: Do not permit children to draw on walk."  UMF 26.  On or about November 4, 2005, Ms. Dodd served a notice upon Plaintiffs that accused them of the following violations: 1) permitting their children to draw on walkways; 2) allowing their dog to bark; and 3) using their backyard as a storage facility.  UMF 27.

On November 5, 2005, Mrs. Pack-Lo wrote a letter to Fort Washington II, stating that she believes the "manager is finding ways to harass my family" and discussing the alleged mold/mildew issues.  UMF 28.

3

On or about November 7, 2005, Roxean Defendis inspected Plaintiffs' unit in Mrs. Pack-Lo's presence.  UMF 29.  After meeting with Mrs. Pack-Lo, Ms. Defendis sent an email to Ms. Dodd dated November 7, 2005, stating: "[Mrs. Pack-Lo] was quite upset and I was attempting to salvage her as a tenant for you.  It now occurs to me that possibly you do not want to retain her tenancy.  We can discuss the matter tomorrow (Tuesday)."  UMF 33.

On November 10, 2005, at or around 1:30 p.m., a City of Fresno Code Enforcement officer came to Plaintiffs' apartment to inspect it.  UMF 35.  Also on November 10, 2005, Defendants served upon Plaintiffs a 60 Day Notice of Termination of Tenancy.  UMF 34.  This notice provided that Plaintiffs' "tenancy of the premises is terminated effective at the end of a sixty (60) day period after service on you of this notice, or Jan. 10/06" whichever is later.  UMF 56.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and "the non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'"  T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed.R.Civ.P. 56(e)).  As to the specific facts offered by the nonmoving party, the court does not weigh conflicting evidence, but draws all inferences in the light most favorable to the nonmoving party.  Id. at 630-31.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the

4

1  dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must
2  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
3  suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.
4  Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that
5  the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
6  the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

7  In the endeavor to establish the existence of a factual dispute, the opposing party need not
8  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
9  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
10 trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce
11 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
12 Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
13 amendments).

14 In resolving the summary judgment motion, the court examines the pleadings, depositions,
15 answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56 (c).
16 The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all
17 reasonable inferences that may be drawn from the facts placed before the court must be drawn in
18 favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc.,
19 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and
20 it is the opposing party's obligation to produce a factual predicate from which the inference may
21 be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd,*
22 810 F.2d 898, 902 (9th Cir. 1987).

23 Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
24 show that there is some metaphysical doubt as to the material facts . . . . Where the record taken
25 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
26 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

27
28

**DISCUSSION**

A.   First Cause of Action- Violation of the Fair Housing Act

Plaintiffs' first cause of action alleges that Defendants discriminated against Plaintiffs on the basis of familial status, in violation of 42 U.S.C. §§ 3604(b) and (c).[1]  The first cause of action also alleges unlawful retaliation in violation of 42 U.S.C. § 3617 based on Defendants' alleged eviction in retaliation for Plaintiffs' complaints of mold and discriminatory treatment.  The Court will address each section separately.

   1.   *Section 3604(b)*

Plaintiffs' argument under 3604(b) involves three rules: (1) the rule requiring adult supervision for all children 10 and under while outside; (2) the "modified" adult supervision rule; and (3) the prohibition of bicycling, skating, etc. in common areas, sidewalks and parking areas.

Section 3604(b) provides, in relevant part, that it is illegal to discriminate in the "terms, conditions, and privileges of a rental dwelling because of familial status."  A plaintiff may proceed under section 3604(b) under either disparate impact or disparate treatment, or both.  Budnick v. Town of Carefree, 518 F.3d 1109 (9th Cir. 2008).  "[A] plaintiff makes out a prima facie case of intentional discrimination under the FHA merely by showing that a protected group has been subjected to explicitly differential-i.e. discriminatory-treatment."  Bangerter v. Orem City Corp., 46 F.3d 1491, 1501 (10th Cir. 1995).  Defendant must then set forth a legitimate, non-discriminatory reason for the acts.  Budnick, 518 F.3d at 1116.  In making that showing, defendants must establish that their rules constitute a compelling business necessity and that they

---

[1] The Court notes that during Plaintiffs' tenancy, the children were both under three years old.  It is therefore doubtful that any of the rules at issue restricted Plaintiffs and/or their children.  Nonetheless, the concept of standing under the FHA is broad.  42 U.S.C. § 3602(i) defines an "aggrieved person" as (1) any person who claims to have been injured by a discriminatory housing practice; or (2) any person who believes that he or she will be injured by a discriminatory housing practice that is about to occur.  Any person "harmed by discrimination, whether or not the target of the discrimination, can sue to recover for his or her own injury."  San Pedro Hotel v. City of Los Angeles, 159 F.3d 470, 475 (9th Cir.1998) (citing Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 212 (1972)).  While the extent to which Plaintiffs were actually affected by the rules may be more relevant to damages, they have met the minimal standing requirements.  See Llanos v. Estate of Coehlo, 24 F.Supp.2d 1052, 1057 (E.D.Cal. 1998) (although plaintiff child was too young to be affected by rules, defendants' discriminatory policies were targeted against children generally, a class of persons that included plaintiff).

have used the least restrictive means to achieve that end. Fair Housing Council v. Ayres, 855 F.Supp. 315, 318-19 (C.D.Cal.1994). The burden then shifts to plaintiff, who must show that the reasons were a pretext for discrimination. Budnick, at 1117.

      a.    Adult Supervision Rule

The first rule Plaintiffs challenge under section 3604(b) is the requirement that all children 10 and under be supervised by an adult while outside. They contend that it is facially discriminatory because it limits when children 10 and under can use the facilities and subjects families with children to possible eviction.

Indeed, the rule on its face targets families with children 10 and under and the burden therefore shifts to Defendants to show a legitimate business reason for the rule. Pfaff v. U.S. Dep't of Hous. & Urban Dev., 88 F.3d 739 (9th Cir.1996) (defendant's reasons for implementing facially discriminatory rules must be reviewed under a reasonableness standard). Defendants argue that the rule doesn't prohibit children 10 and under from being outside, but rather imposes responsibility on an adult to supervise young children for safety reasons and to ensure enjoyment by all tenants. Defendants urge the Court to read the rule in the context of the entire NOISE AND CONDUCT rule, which they contend is age-neutral and requires tenants to be responsible for the supervision of other occupants and guest.

While Defendants are free to impose rules for health and safety reasons, such rules must be reasonable. Here, Defendants have not shown why it is reasonable to impose such restrictions on children as old as 10. Defendants provide no explanation why a 10 year old child must be accompanied by an adult when outside, nor do they offer any justification beyond simply stating that the rule is required for safety and enjoyment. Certainly, it would be reasonable to require adult supervision for young children, and although the Court is not suggesting an appropriate age for such a restriction, the instant rule is overbroad and unduly restrictive. Under Defendants' rule, a 10 year old child could not read a book steps away from his front door. See eg. Fair Housing Congress v. Weber, 993 F.Supp. 1286, 1292 (C.D.Cal. 1997) (rule prohibiting children to play outside because of disturbance to other tenants or damage to property was not the least restrictive means for accomplishing these ends); Llanos v. Estate of Coehlo, 24 F.Supp.2d 1052, 1061-1062

1  (E.D. Cal. 1998) (defendant's rule restricting children under 18 from using adult pools was "overly broad, 'paternalistic' and unduly restrictive); U.S v. Westland Co, Fair Housing-Fair Lending ¶ 15,941 (C.D. Cal. 1994) (rules requiring adult supervision for children under 18 while using the pool and/or while using the clubhouse or common areas were not justified).

Defendants attempt to distinguish the rule by arguing that it is not a "blanket" rule as the one at issue in Weber. Defendants are correct that their rule does not prohibit *all* children from being outside without an adult, but this does not change the fact that Defendants have failed to carry their burden of demonstrating a reasonable justification for the rule.

Insofar as Defendants argue that the rule must be read in the context of the NOISE AND CONDUCT rule, the Court is obligated to examine all aspects of a rule and the rules contained therein. Weber, 993 F.Supp at 1291-1292 (examining each sentence of a multi-sentence rule separately). Defendants cannot justify an otherwise improper rule under the guise of a general statement that tenants are responsible for the supervision of other occupants and guests.

The Court therefore finds that the rule requiring adult supervision for children 10 and under while outside violates section 3604(b) and summary adjudication is GRANTED.

        b.      "Modified" Adult Supervision Rule

Plaintiffs' argument regarding the "modified" adult supervision rule is based on their interpretation of Ms. Dodd's deposition testimony, which they contend expands the adult supervision rule to those children 17 and under. The Court does not, however, read Ms. Dodd's testimony as expanding the rule that children 10 and under be supervised by an adult while outside.

During her deposition, Ms. Dodd was asked whether it was correct that, during her time managing the Fort Washington II Apartments, "children 17 and under had to be supervised by their parents if they were in the common areas." Ms. Dodd replied, "Young children had to be supervised, correct." When asked if this meant "children 17 and under," Ms. Dodd responded, "Yes. We ask that children be supervised by adults." Deposition of Anny Dodd, 94:25-95:7.

Defendants argue, and the Court agrees, that there is no evidence of a written, enforced rule for children 17 and under other than an ambiguous response to a vague question. If such a

rule did exist, though, it would be subject to the same finding as the rule requiring supervision of children 10 and under.

### c. Bicycle, Etc. Prohibition

Plaintiffs next contend that the rule prohibiting bicycle riding, skateboarding, rollerblading and skating along the common area sidewalks, walkways and parking areas has a disparate impact on children and therefore violates section 3604(b). In so arguing, Plaintiffs acknowledge that the rule is applicable to all tenants regardless of age but contend that it is has a significantly adverse impact upon children, "for children routinely ride bicycles, skateboard, rollerblade and skate in the common areas of any apartment complex." Motion, at 24. In their reply, Plaintiffs contend that the rule "unequivocally has a significant adverse impact on families ... for it is common knowledge that children ride bikes, etc." Reply, at 20.

Finding that Plaintiffs have established a prima facie case on this issue, however, requires the Court to make an assumption that children are more likely than adults to ride bikes, roller board or skateboard. Plaintiffs have not provided any evidence to support their claim and the Court therefore will not adopt such an assumption on summary judgment. Summary adjudication on this issue is therefore DENIED.

2. *Section 3604(c)*

Plaintiffs argue that the rules (1) requiring adult supervision for all children under 10 while outside; (2) prohibiting use of the Clubhouse to children under 18 without adult, resident supervision; (3) prohibiting children under 12 from using the Pool Table; (4) requiring children under 14 to be supervised while using the Pool/Spa; and (5) requiring children under 18 to abide by a 10:00 p.m. curfew violate section 3604(c). Plaintiffs also contend that the three notices relating to the chalk drawings violate section 3604(c).

Section 3604(c) makes it unlawful to:

> To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

Unlike section 3604(b), section 3604(c) does not require discriminatory intent and is not analyzed under a burden-shifting paradigm. Rather, the inquiry under this standard is whether the alleged statement at issue would suggest a preference to an "ordinary reader or listener." Fair Housing Congress v. Weber, 993 F.Supp.1288, 1290 (C.D.Cal. 1997); Llanos v. Estate of Coehlo, 24 F.Supp.2d 1052, 1057 (E.D.Cal. 1998) (noting that the Ninth Circuit has not addressed the issue but adopting the "sound" reasoning of other circuits). Discriminatory intent is not required. Llanos, 24 F.Supp 2d at 1056. Discriminatory preference, rather than an outright ban, is the basis for a 3604(c) violation. Weber, 993 F.Supp. at 1291.

A majority of the cases dealing with violations of section 3604(c) do not involve rules and regulations of tenancy. Instead, most section 3604(c) discussions involve allegations of "steering" protected individuals away from certain housing opportunities and/or obviously discriminatory statements made to prospective renters. See eg. Southern California Housing Rights Center v. Krug,564 F.Supp.2d 1138 (C.D. Cal. 2007); Llanos, 24 F.Supp.2d at 1057. Challenges to rules similar to those at issue here are generally brought under 3604(b), which seems the obvious choice because it is difficult to comprehend how rules that are properly justified by safety reasons could survive under 3604(b) yet fail under 3604(c) solely because they treat children of a certain age differently.

One exception is Fair Housing Congress v. Weber, 993 F.Supp.1288 (C.D.Cal. 1997), where, in addition to a steering claim under section 3604(c), the plaintiffs challenged a rule that stated, "Children will not be allowed to play or run around inside the building area at any time because of disturbance to other tenants or damage to building property." Id. at 1289. The Court held that while the rule was not an outright ban on children as tenants, it was a limitation on the use by children tenants of the apartment facilities and an ordinary reader could not interpret it otherwise. Id. at 1291. Defendants did not present any non-discriminatory alternative interpretation and the court therefore found that the rule violated section 3604(c). With this in mind, the Court will examine each of the rules at issue under section 3604(c).

a.  Adult Supervision Rule

The Court has already determined that the adult supervision rule violates section 3604(b) and an analysis under section 3604(c) is therefore unnecessary.

b.  Clubhouse Restriction

Plaintiffs argue that the rule prohibiting children under 18 from using the Clubhouse without adult, resident supervision violates section 3604(c). The Court agrees. An ordinary reader would interpret this rule as placing a limitation on children (under 18), which in turn discriminates against tenants with children. Although Defendants suggest that this rule is necessary for safety and liability reasons, the Court cannot conclude that an ordinary reader could interpret this rule, which includes a prohibition on children one year away from the age of majority, from entering the Clubhouse without an adult as anything other than a discriminatory limitation. Summary adjudication is GRANTED.

c.  Pool Table Restriction

Similarly, the Court finds that an ordinary reader would interpret the rule prohibiting children under 12 from using the Pool Table to be a limitation on children under the age of 12, which in turn discriminates against tenants with children. Defendants suggest that the rule could be interpreted as a safety precaution for children as well as the adult tenants and contend that is necessary for liability reasons, to prevent property damage and to ensure quiet enjoyment. The Court cannot conclude that an ordinary reader would interpret this rule as Defendants suggest and summary adjudication is therefore GRANTED.

d.  Pool/Spa Supervision Rule

This rule requires children under 14 to be supervised by a parent or legal guardian while using the Pool and Spa. An ordinary reader would interpret this as a limitation on children, especially since the child specifically needs supervision from a parent or legal guardian. This means that children under 14 cannot use the pool with the supervision of other adults, such as older siblings, adult babysitters or even other adult family members. Defendants again point to safety reasons, and while the Court recognizes the inherent dangers of unsupervised swimming,

the requirement of parent or legal guardian supervision transforms this rule from one that could be reasonably interpreted as a safety precaution to one that simply limits children and their families.

Insofar as Defendants contend that the rule is required by 22 Cal. Code Regs section 65539(c), their argument is unpersuasive. Section 65539(c) states that where no lifeguard is on duty, a warning sign must be placed that reads, in part, "Children Under the Age of 14 Should Not Use Pool Without an Adult in Attendance." The requirement does not, however, specify that the supervising adult must be either a parent or guardian.

The Court cannot conclude that an ordinary reader would interpret this rule simply as a safety measure and summary adjudication is therefore GRANTED.

        e.      Curfew Rule

Plaintiff next challenges the rule requiring children under 18 to abide by a 10:00 p.m. curfew. As with the above rules, an ordinary reader would likely interpret this as a limitation on children, especially since it effectively acts as a blanket prohibition on children being outdoors after 10:00 p.m. Defendants again fail to cite to anything other than a general safety concern and cannot suggest that an ordinary reader would interpret this rule as anything other than a prohibition on children and their families. Defendants also suggest that this "likely" refers to a local jurisdictional law, though they provide the Court with no specific evidence.

The Court cannot conclude that an ordinary reader would interpret this rule simply as a safety measure and summary adjudication is therefore GRANTED.

        f.      Notices Regarding Chalk Drawings

Finally, Plaintiffs contend that the three notices they received relating to the chalk drawings violate section 3604(c). These notices, however, derive from Defendants' desire to keep the property clean and all tenants, not just children, are subject to notices for failing to properly maintain their premises. An ordinary reader would therefore likely interpret this not as a limitation on children, but rather as an effort by Defendants to ensure that tenants comply with the requirements to keep the property in a clean and neat condition. Summary adjudication is therefore DENIED.

3.  *Retaliatory Eviction*

Plaintiffs allege that Defendants violated section 3617 by issuing the 60 Day Notice to Terminate in retaliation for complaining of Defendants' discrimination and the mold in their apartment. During briefing on this motion and at the hearing, Plaintiffs indicated that summary judgment is not proper on this issue and it is therefore DENIED.

B.  Second Cause of Action- Violation of the California Fair Employment and Housing Act

Plaintiffs contend that the above acts violate numerous sections of the California Fair Employment and Housing Act, Cal. Gov. Code section 12955 et seq. ("FEHA"). Specifically, Plaintiffs allege violations of 12955(a), (c), (d), (f) and (g), as well as a violation of section 12955.7. The relevant provisions provide:

> (a) For the owner of any housing accommodation to discriminate against or harass any person because of the race, color, religion, sex, sexual orientation, marital status, national origin, ancestry, familial status, source of income, or disability of that person.
>
> (c) For any person to make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a housing accommodation that indicates any preference, limitation, or discrimination based on race, color, religion, sex, sexual orientation, marital status, national origin, ancestry, familial status, source of income, or disability or an intention to make that preference, limitation, or discrimination.
>
> (d) For any person subject to the provisions of Section 51 of the Civil Code, as that section applies to housing accommodations, to discriminate against any person on the basis of sex, sexual orientation, color, race, religion, ancestry, national origin, familial status, marital status, disability, source of income, or on any other basis prohibited by that section.
>
> (f) For any owner of housing accommodations to harass, evict, or otherwise discriminate against any person in the sale or rental of housing accommodations when the owner's dominant purpose is retaliation against a person who has opposed practices unlawful under this section, informed law enforcement agencies of practices believed unlawful under this section, has testified or assisted in any proceeding under this part, or has aided or encouraged a person to exercise or enjoy the rights secured by this part. Nothing herein is intended to cause or permit the delay of an unlawful detainer action.
>
> (g) For any person to aid, abet, incite, compel, or coerce the doing of any of the acts or practices declared unlawful in this section, or to attempt to do so.

FEHA provides equivalent, if not greater protections for victims of discrimination. See Cal. Gov. Code § 12955.6 ("Nothing in this part shall be construed to afford to the classes protected under this part, fewer rights or remedies than the federal Fair Housing Amendments Act

1 of 1988 (P.L. 100-430) and its implementing regulations (24 C.F.R. 100.1 et seq.) ... This part
2 may be construed to afford greater rights and remedies to an aggrieved person than those afforded
3 by federal law and other state laws").

California courts rely on federal housing discrimination law to interpret analogous provisions of FEHA. Alameda v. Fair Employment & Housing Comm'n, 153 Cal.App.3d 499, 504 (1984). Therefore, violations of The Fair Housing Act will also constitute violations of the parallel provisions of FEHA.

1.   *Section 12955(c)*

Here, the language of sections 12955(c) and 3604(c) are substantially similar and subject to the same analysis. See Moua v. City of Chico, 324 F.Supp. 2d 1132, 1141 (E.D. Cal. 2004); Inland Mediation Bd. v. City of Pomona, 158 F.Supp.2d 1120 (C.D. Cal. 2001). Therefore, to the extent the Court granted summary adjudication under section 3604(c), it also GRANTS summary adjudication under section 12955(c).

2.   *Sections 12955(a) and (d)*

As to sections 12955(a) and (d), both are general prohibitions against discrimination based on protected characteristics, including familial status. Section 12955(a) applies to the "owner of any housing accommodation," and section 12955(d) applies to those subject to the provisions of California Civil Code section 51. Section 51 applies to "business establishments" and employees of such establishments. Cal. Civ. Code § 52(a); see eg., Wood ex rel. Estate of Murillo v. Helping Hands Sanctuary of Idaho, Inc., 2005 WL 589328 (N.D. Cal. 2005).

It is undisputed that Defendant Fort Washington II, General Partnership, is the owner of the Fort Washington II Apartments. It is also undisputed that Defendant Fort Washington II is in the business of renting apartments and given the broad definition of "business establishment," it qualifies as a business establishment for purposes of California Civil Code Section 51. A business establishment is defined in the "broadest sense reasonably possible" under California law, and includes "everything about which one can be employed" and is "often synonymous with calling, occupation, or trade, engaged in for the purpose of making a livelihood or gain." Harris v. Mothers Against Drunk Driving, 40 Cal. App. 4th 16 (1995) (citing O'Connor v. Village Green

Owners Assn., 33 Cal.3d 790 (1983)).  The term "business establishment" has been uniformly construed as including rental housing.  Hubert v. Williams, 133 Cal.App.3d Supp. 1, 2 (1982).

Sections 12955(a) and (d) are therefore applicable to Defendants and subject to the same burden-shifting analysis performed under the FHA.  Walker v. City of Lakewood, 272 F.3d 1114 (2001).  Accordingly, to the extent the Court found that Defendants violated section 3604(b) using the same burden-shifting analysis, the Court finds that summary adjudication should be GRANTED under section 12955(a) and (d).

3.   *Section 12955(g)*

Section 12955(g) prohibits aiding, abetting, inciting, compelling, or coercing the doing of any of the acts declared unlawful by FEHA.  As the Court has denied summary adjudication on all issues related to the involvement of Ms. Dodd and/or Ms. Defendis pursuant to Plaintiffs' state that summary adjudication is not proper, the Court also DENIES summary judgment on this issue.

4.   *Sections 12955(f) and 12955.7*

Sections 12955(f) and 12955.7 deal with retaliatory actions.  As Plaintiffs have indicated that summary judgment is not proper on this issue, summary adjudication for violations of sections 12955(f) and 12955.7 is DENIED.

C.   Third Cause of Action- Violation of California's Unruh Civil Rights Act

In the third cause of action, Plaintiffs allege that Defendants violated California Civil Code section 51, et seq., by discriminating against them and families with children in operation of the Fort Washington II Apartments, a business establishment, because of familial status.

Section 51(a) provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Section 51.2 further provides that Section 51 "shall be construed to prohibit a business establishment from discriminating in the sale or rental of housing based on

age." The Unruh Civil Rights Act protects only against intentional discrimination. Grier v. Brown, 230 F.Supp.2d 1108, 1120 (N.D. Cal. 2002).

Rules that restrict children and have been found to violate section 3604 of the FHA can also violate section 51. See eg., Llanos v. Estate of Coehlo, 24 F.Supp.2d 1052 (E.D. Cal. 1998). As the Unruh Act requires intent, the rules found invalid under 3604(b) are also invalid under Section 51. Summary adjudication for violations of California Civil Code section 51 is therefore GRANTED.

D.      Fourth Cause of Action- Unfair Business Practices

In the Fourth Cause of Action, Plaintiffs allege that Defendants violated the Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200, et seq., by engaging in a pattern or practice of unlawful discrimination in the operation of Fort Washington II Apartments and therefore engaging in unfair competition.

Section 17200, et seq., is also broader than Plaintiff's Fair Housing Act claims. The law applies to three types of unfair competition: (1) unlawful competition, (2) unfair competition; and (3) fraudulent business practices. Plaintiffs' section 17200 claim is based on the claims of unlawful conduct under the various statutes discussed above. The violations of the Fair Housing Act, FEHA and the Unruh Civil Rights Act constitute unlawful competition under section 17200 and summary adjudication is therefore GRANTED. See Housing Rights Center v. Sterling, 404 F.Supp.2d 1179, 1194 (C.D. Cal. 2004).

E.      Fifth and Sixth Causes of Action- Negligence and Retaliatory Eviction

Plaintiffs believe that summary adjudication on these issues is improper and it is therefore DENIED.

 IT IS SO ORDERED.

   Dated:   **December 30, 2009**                    **/s/ Dennis L. Beck**
                                                UNITED STATES MAGISTRATE JUDGE